# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| REAL GOOD TECHNOLOGIES, LLC<br>Suite 6-2121<br>200 Quebec Street<br>Denver, Colorado 80236,<br><br>               Plaintiff,<br><br>v.<br><br>VICTORY SOLUTIONS LLC,<br>c/o Shannon Burns, Statutory Agent<br>8370 Dow Circle<br>Strongsville, Ohio 44136<br><br><br>               Defendant. | )<br>)  Case No.<br>)<br>)<br>)<br>)  JUDGE:<br>)<br>)<br>)<br>)  MAGISTRATE:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT
### (Jury Demand Endorsed Hereon)

Now comes the Plaintiff, Real Good Technologies, LLC ("Plaintiff" or "Real Good Technologies"), by and through its undersigned attorneys, and for its Complaint against Defendant, Victory Solutions LLC ("Defendant" or "Victory Solutions") (collectively, the "Parties"), hereby states and avers as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff was at all relevant times, and is, a Colorado limited liability company, with its principal place of business located at 200 Quebec Street, Denver, Colorado 80236.

{01822678 -2}

2. Defendant was at all relevant times, and is, an Ohio limited liability company with its principal place of business located at 8370 Dow Circle, Strongsville, Ohio 44136.

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(1), as the matter in controversy is between citizens of different states and the relief prayed for in this Complaint exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4. Venue is proper in this District, pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), because, without limitation, the Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District.

## BACKGROUND AND FACTS

5. Plaintiff incorporates into this paragraph paragraphs 1 through 4 above as if fully rewritten here.

6. On or about May 2, 2014, in Cleveland, Cuyahoga County, Ohio, Defendant executed and delivered to Plaintiff a Promissory Note in the principal amount of $1,000,000.00, plus interest at the non-default rate of 0.33% per annum (the "Note"), a true and accurate copy of which accompanies this Complaint as Exhibit A.

7. Defendant was, at all times referred to in this Complaint, and is, the owner and holder of the Note.

8. The Note constitutes part of the consideration for the Defendant's purchase from Plaintiff of certain software, intellectual property, customer contracts, and other

2

{01822678 -2}

related assets (collectively, the "Purchased Assets"), owned by Plaintiff and used in the operation of a certain software and technology development and sales business known as "Real Good Technologies."

9. Plaintiff has performed all of its obligations, if any, under the Note.

10. The terms and conditions of the Defendant's purchase of the Purchased Assets from Plaintiff are set forth in the Asset Purchase and Sale Agreement, executed by Plaintiff and Defendant on or about May 2, 2014 (the "Asset Purchase Agreement").

11. A true and accurate copy of the Asset Purchase Agreement accompanies this Complaint as Exhibit B.

12. Plaintiff has not assigned, or otherwise transferred, any of its rights or remedies under the Asset Purchase Agreement.

13. Plaintiff has performed all of its obligations under the Asset Purchase Agreement.

### COUNT I
### (Default on Note)

14. Plaintiff incorporates in this paragraph the averments contained in paragraphs 1 through 13 above as if fully rewritten in this paragraph.

15. Subject to the ability of Defendant to escrow indemnifiable "Losses" (as defined in the Asset Purchase Agreement) under Section 7.5 of the Asset Purchase Agreement, and further subject to adjustment as provided in Section 3.1 of the Asset Purchase Agreement, Section 1 and Exhibit A of the Note obligated Defendant to submit to Plaintiff a principal payment of $405,000.00, plus interest, on the Note by July 7, 2014 (the "First Installment").

16. At no time has Plaintiff been liable to Defendant for any "Buyer Claim," as described in Sections 7.2 and 7.5 of the Asset Purchase Agreement, and, therefore, Defendant is not entitled to escrow indemnifiable Losses, or offset those Losses against the amount of the First Installment under Section 1 of the Asset Purchase Agreement.

17. At no time has the amount of the First Installment been subject to any adjustment under Section 3.1 of the Asset Purchase Agreement.

18. Defendant failed to pay the First Installment to Plaintiff by July 7, 2014, and, as of the filing of this Complaint, Defendant has not paid the First Installment to Plaintiff, in violation of, without limitation, Section 1 of the Note (the "First Failure of Note Payment").

19. Defendant failed to cure the First Failure of Note Payment within thirty (30) days following July 7, 2014 (the "First Cure Period"), as described in Section 4(1) of the Note.

20. Defendant did not provide any notice to Plaintiff, under Section 9 of the Agreement, that Defendant anticipated a delay in paying the First Installment to Plaintiff by July 7, 2014.

21. Subject to the ability of Defendant to escrow indemnifiable "Losses" (as defined in the Asset Purchase Agreement) under Section 7.5 of the Asset Purchase Agreement, and further subject to adjustment as provided in Section 3.1 of the Asset Purchase Agreement, Section 1 and Exhibit A of the Note obligated Defendant to submit to Plaintiff a principal payment of $250,000.00, plus interest, on the Note by January 2, 2015 (the "Second Installment").

{01822678 -2}

4

22. At no time has Plaintiff been liable to Defendant for any "Buyer Claim," as described in Sections 7.2 and 7.5 of the Asset Purchase Agreement, and, therefore, Defendant is not entitled to escrow indemnifiable Losses, or offset those Losses against the amount of the Second Installment under Section 1 of the Asset Purchase Agreement.

23. At no time has the amount of the Second Installment been subject to any adjustment under Section 3.1 of the Asset Purchase Agreement.

24. The Defendant failed to pay the Second Installment to Plaintiff by January 2, 2015, and, as of the filing of this Complaint, has not paid the Second Installment to Plaintiff, in violation of, without limitation, Section 1 of the Note (the "Second Failure of Note Payment").

25. Defendant failed to cure the Second Failure of Note Payment within thirty (30) days following January 2, 2015 (the "Second Cure Period"), as described in Section 4(1) of the Note.

26. Defendant did not provide any notice to Plaintiff, under Section 9 of the Agreement, that Defendant anticipated a delay in paying the Second Installment to Plaintiff by January 2, 2015.

27. In accordance with Section 4(1) of the Note, Plaintiff, through its undersigned attorneys, notified Defendant in writing of the First Failure of Note Payment and the Second Failure of Note Payment, by letter to Defendant dated April 23, 2015 (the "Default Notice").

28. A true and accurate copy of the Default Notice accompanies this Complaint as Exhibit C.

29. Defendant's failure to immediately pay the First Installment and the Second Installment to Plaintiff, following Defendant's receipt of the Default Notice, constitute Events of Default under Section 4(1) of the Note (the "Events of Default").

30. As a result of the occurrence of the Events of Default, Plaintiff, under Section 5 of the Note, has declared immediately due and payable, and Defendant is now liable to Plaintiff for, the entire principal balance of the Note, together with all accrued but unpaid interest, penalties, costs, expenses, reasonable attorneys' fees, and other fees.

31. Under Section 5 of the Note and Section 9 of the Asset Purchase Agreement, Plaintiff is entitled to interest on the unpaid principal balance of the Note at the rate of 18% per annum from and after July 7, 2014, until that principal amount is paid in full.

32. As a result of the occurrence of the Events of Default, Plaintiff is entitled to a judgment of $1,000,000.00, plus interest on that amount at the rate of 18% per annum from July 7, 2014, until that amount is paid in full, the costs of this action and the costs of any other action to collect that judgment, and Plaintiff's reasonable attorneys' fees and legal expenses in bringing this action and collecting that judgment.

## COUNT II
### (Breach of Contract – Earnout Payment)

33. Plaintiff incorporates in this paragraph the averments contained in paragraphs 1 through 32 above as if fully rewritten here.

34. Under Section 3.2 of the Asset Purchase Agreement, Plaintiff is entitled to annual "Earnout Payments," as part of the consideration for Plaintiff's sale of the Purchased Assets to Defendant.

35. Under Exhibit A to the Asset Purchase Agreement, Defendant was obligated, by no later than January 31, 2015, to provide Plaintiff with (a) an "Earnout Statement for 2014" setting forth the computation, and amount, of the "Revenues" (as defined in the Asset Purchase Agreement), and the amount of Defendant's earnout payment to Plaintiff for 2014 (the "Earnout Payment for 2014"), and (b) the Earnout Payment for 2014.

36. Section 3.2 of the Asset Purchase Agreement defines "Revenues" as the total gross revenues of the business operations of the Defendant and its affiliates (including the Purchased Assets), but excluding certain revenues of Defendant, which revenues were unknown to Plaintiff as of the filing of this Complaint.

37. As of the filing of this Complaint, Defendant has failed to provide Plaintiff with the Earnout Statement for 2014, or the Earnout Payment for 2014, in violation of, without limitation, Section 3.2 of the Asset Purchase Agreement and Exhibit A to the Asset Purchase Agreement.

38. Defendant did not provide any notice to Plaintiff, under Section 9 of the Asset Purchase Agreement, that Defendant anticipated a delay in paying the Earnout Payment for 2014 to Plaintiff by its due date, January 31, 2015.

39. Under Section 3.2 of the Asset Purchase Agreement, the Earnout Payment for 2014 equals the greater of (a) 1.8% of the Defendant's first $2,666,666.00 of its Revenues during the period May 1, 2014, through December 31, 2014, plus 2.5%

of the Defendant's Revenues in excess of $2,666,666.00 during the period May 1, 2014, through December 31, 2014, or (b) 1.8% of the first $4,000,000.00 of Defendant's Revenues for the period January 1, 2012, through December 31, 2012, plus 2.5% of the Defendant's Revenues in excess of $4,000,000.00 for the period January 1, 2012, through December 31, 2012.

40. As of the filing of this Complaint, because of the Defendant's failure to provide the Earnout Statement for 2014 to Plaintiff, Plaintiff is unable to determine the amount of the Earnout Payment for 2014.

41. As of the filing of the Complaint, Defendant is liable to the Plaintiff for the Earnout Payment for 2014, plus interest at the rate of 18% per annum from and after January 31, 2015, plus the costs of this action, the costs of any other action to collect that judgment, and Plaintiff's reasonable attorneys' fees in bringing this action and collecting that judgment under Section 9 of the Asset Purchase Agreement.

## COUNT III
### (Increased Guaranteed Purchase Price)

42. Plaintiff incorporates in this paragraph the averments contained in paragraphs 1 through 41 above as if fully rewritten here.

43. As of the filing of the Complaint, Defendant has failed to pay to Plaintiff the Initial Payment of $405,000.00 of the Guaranteed Purchase Price, as required under Section 3.1(a) of the Asset Purchase Agreement.

44. As a result of the Defendant's failure to pay the Initial Payment of $405,000.00 to Plaintiff, Plaintiff is entitled, under Sections 3.1(b) and 9 of the Asset Purchase Agreement, to a judgment of (a) the increased Guaranteed Purchase Price of

$1,100,000.00, plus (b) all Revenues, consisting of the total gross revenues of the business operations of the Defendant and its affiliates (including the Purchased Assets), but excluding certain revenues of Defendant, which revenues were unknown to Plaintiff as of the filing of this Complaint, net only of Defendant's normal operating costs paid to third parties (but specifically netting amounts sufficient to cover Defendant's overhead expenses), received by Defendant after July 7, 2014, relating to use of the Purchased Assets, until Plaintiff receives from Defendant a payment of $405,000.00 on the judgment, plus (c) interest on the judgment at the rate of 18% per annum from and after July 7, 2014, plus (d) the costs of this action, plus (e) the costs of any other action to collect that judgment, and Plaintiff's reasonable attorneys' fees in bringing this action and collecting that judgment, under Section 9 of the Asset Purchase Agreement..

## COUNT IV
### (Unjust Enrichment)

45. Plaintiff incorporates in this paragraph the averments contained in paragraphs 1 through 44 above as if fully rewritten here.

46. Defendant has been unjustly enriched by its knowing acceptance and receipt of the "Purchased Assets," as defined in Section 1.1 of the Asset Purchase Agreement, which Purchased Assets were conferred upon Defendant by Plaintiff, without any payment to Plaintiff as of the filing of this Complaint.

47. The circumstances surrounding Defendant's acceptance and receipt of the Purchased Assets make it unjust for Defendant to retain the Purchased Assets without full payment to Plaintiff for the Purchased Assets.

48. If the Court finds that no contract between Plaintiff and Defendant existed for Defendant's purchase of the Purchased Assets, Plaintiff is entitled to a judgment of not less than $1,000,000.00, plus interest at the statutory rate from the date of judgment, against Defendant, as the value of the benefit that Plaintiff conferred upon Defendant.

## COUNT V
### (Promissory Estoppel)

49. Plaintiff incorporates in this paragraph the averments contained in paragraphs 1 through 48 above as if fully rewritten here.

50. In accordance with the negotiations between Plaintiff and Defendant, Defendant promised to pay $1,000,000.00, plus the Earnout Payments, to Plaintiff in exchange for the Purchased Assets.

51. Defendant knew or should have known that its promise to pay $1,000,000.00, plus the Earnout Payments, to Plaintiff for the Purchased Assets would reasonably be expected to induce Plaintiff to convey the Purchased Assets to Defendant.

52. In addition, Defendant knew or should have known that its failure to make any payment to Plaintiff on Defendant's promise to pay $1,000,000.00, or to pay the Earnout Payment for 2014 to Plaintiff, would result in a severe financial burden to Plaintiff, thereby causing significant damages to Plaintiff.

53. Plaintiff reasonably relied on Defendant's promise to pay Plaintiff the $1,000,000.00 and to pay the Earnout Payment for 2014 to Plaintiff, in accordance with Defendant's promises to Plaintiff.

54. Defendant failed to fulfill its promises to Plaintiff to pay the $1,000,000.00, and the Earnout Payment for 2014, to Plaintiff.

55. As a direct and proximate result of its reliance upon Defendant's promises, Plaintiff has been damaged in the amount of not less than $1,000,000.00.

56. If the Court finds that no contract between Plaintiff and Defendant existed for Defendant's purchase of the Purchased Assets from Plaintiff, Plaintiff is entitled to a judgment of not less than $1,000,000.00, plus interest at the statutory rate from the date of judgment, against Defendant, as Plaintiff's damages resulting form Defendant's breach of its promises to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Real Good Technologies, LLC, demands judgment against Defendant, Victory Solutions LLC, as follows:

1. On Count I of this Complaint, Plaintiff demands against Defendant a judgment in the amount of $1,000,000.00, plus interest at the rate of 18.00% per annum from and after July 7, 2014, until that amount is paid in full, plus costs and Plaintiff's reasonable attorneys' fees;

2. On Count II of this Complaint, Plaintiff demands against Defendant an additional judgment in the amount of the Earnout Payment for 2014, to be determined at the trial of this action, plus interest at the rate of 18.00% per annum on the amount of the Earnout Payment for 2014 from and after January 31, 2015, plus costs and Plaintiff's reasonable attorneys' fees;

3. On County III of this Complaint, in the alternative to a judgment on Count I and Count II of this Complaint, Plaintiff demands against Defendant a judgment of (a) $1,100,000.00, plus (b) all Revenues, consisting of the total gross revenues of the business operations of the Defendant and its affiliates (including the Purchased Assets), but excluding certain revenues of Defendant, which revenues were unknown to Plaintiff as of the filing of this Complaint, net only of Defendant's normal operating costs paid to third parties (but specifically netting amounts sufficient to cover Defendant's overhead expenses), received by Defendant after July 7, 2014, relating to use of the Purchased Assets, as such amount will be determined at trial, until Plaintiff receives from Defendant a payment of $405,000.00 on the judgment, plus (c) interest on the judgment at the rate of 18% per annum from and after July 7, 2014, plus (d) the costs of this action, plus (e) the costs of any other action to collect that judgment, and Plaintiff's reasonable attorneys' fees in bringing this action and collecting that judgment;

4. On Count IV of this Complaint, if the Court determines that no contract existed between Plaintiff and Defendant for the Plaintiff's sale of the Purchased Assets to Defendant, Plaintiff demands against Defendant a judgment in the amount of not less than $1,000,000.00, plus interest at the statutory rate from and after the date of judgment, plus costs, and Plaintiff's reasonable attorneys' fees incurred in this action;

5. On Count V of the Complaint, if the Court determines that no contract existed between Plaintiff and Defendant for the Plaintiff's sale of the Purchased Assets to Defendant, Plaintiff demands against Defendant a judgment in the amount of not less than $1,000,000.00, plus interest at the statutory rate from and after the date of judgment, plus costs, and Plaintiff's reasonable attorneys' fees incurred in this case; and

6. Plaintiff demands a judgment against Defendant for such other and further relief, in law or in equity, as the Court may deem appropriate.

Respectfully submitted,

*/s/ Mark s. Fusco*
Mark S. Fusco (Ohio Reg. No. 0040604)
 Email: mfusco@walterhav.com
 Direct Dial: 216-619-7839
Donald E. Miehls (Ohio Reg. No. 0012145)
 Email: dmiehls@walterhav.com
 Direct Dial: 216-928-2967
WALTER | HAVERFIELD LLP
1301 E. Ninth Street, Suite 3500
Cleveland, OH 44114
(216) 781-1212 telephone
(216) 575-0911 facsimile

*Attorneys for Plaintiff*

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff, Real Good Technologies, LLC, hereby demands a trial by jury with a maximum number of jurors allowed by law on those issues or claims of this Complaint triable of right by a jury.

{01822678 -2}

12

          */s/ Mark S. Fusco*
Mark S. Fusco